**312**

The STATE of Utah, Plaintiff and Respondent,

v.

Peter FOUKAS, Defendant and Appellant.

No. 14135.

Supreme Court of Utah.

Jan. 24, 1977.

D. Gilbert Athay, Athay, Bown & Van-Sciver, Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., Earl F. Dorius, William W. Barrett, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

ELLETT, Justice:

The appellant drove sixty miles per hour on a state highway which was marked for fifty-five miles per hour maximum speed. He was convicted of the offense of speeding and appealed, claiming that there is no validity to the proclamation and ordinance limiting speed to fifty-five miles per hour on Utah highways.

Immediately after the Arab oil embargo, the Governor of Utah issued a

proclamation[1] that the maximum speed upon highways of this state should be fifty-five miles per hour. Fearing for the validity of the proclamation, the State Road Commission thereafter passed an ordinance declaring that the maximum speed for motor vehicles upon the highways of this state be fifty-five miles per hour.

The defendant was convicted of the crime of driving in excess of fifty-five miles per hour and brings this appeal.

 The Governor of the State of Utah is granted the authority by the legislature to reduce the maximum speed limit according to the terms set forth in Section 41–6–46(4) of Utah Code Annotated 1953 as follows:

> Provided, that the governor by proclamation, in time of war or national emergency, may upon recommendation of the federal authorities, change the speed on the highways of the state, to conform to such recommendations.

This statute has two essential requirements: (1) that there be a war or national emergency, and (2) that there be a recommendation by federal authorities to change the speed limit. The statute does not define the word "emergency" and so we look to the definition given in Webster's International Dictionary as an unforeseen combination of circumstances which calls for immediate action.

In January of 1974, when the Governor issued his proclamation, the nation had been alerted by the President[2] that the United States was heading towards the most acute shortage of energy since World War II because of the Arab oil embargo. It was predicted that the supply of petroleum that winter would fall short of anticipated demands by ten to seventeen percent. The resultant effects of the energy crisis were anticipated to reach every American—commercially, domestically, and financially.

The President called upon Congress[3] to enact emergency energy legislation that would minimize the dire effects expected by oil shortages. The President further called upon the governors[4] to reinforce his proposed federal policies by taking appropriate steps on the state level. One of the President's energy-saving recommendations was the establishment of a national speed limit which eventually was set by Congress at fifty-five miles per hour.

Looking back over the past three years it may appear that the energy crisis was not as serious as originally forecasted. Yet, at the time, the existence of conditions[5] which constitute a national emergency were present; and, therefore, we must conclude that the Governor was acting within the scope of the statute when he lowered the Utah highway speed limit to fifty-five miles per hour.

 The second point Foukas raises in his appeal is whether the State Road Commission was acting within its statutory authority under Sections 41–6–47 and 27–12–121, U.C.A.1953, when it adopted the maximum speed limit set by the Governor. These statutes, which must be considered separately, are as follows:

> 41–6–47. *Prima facie limit.*—Whenever the state road commission shall determine upon the basis of an engineering and traffic investigation that any prima facie speed hereinbefore set forth is greater or less than is reasonable or safe under the conditions found to exist at any

1. January 2, 1974.

2. The President's address to the nation outlining steps to deal with the energy emergency, November 7, 1973; see Presidential Documents, Richard Nixon 1973, p. 1312.

3. The President's message to Congress, November 8, 1973; see Presidential Documents, Richard Nixon, 1973, p. 1319.

4. President Nixon's message, November 7, 1973, and telegrams sent to the governors subsequent thereto.

5. Here we adopt the definition of a "national emergency" as being an unforeseen combination of circumstances which calls for immediate action by the national leaders and support from the citizens for the safety, peace, health, and general welfare of the nation.

intersection or other place or upon any part of a state highway, said commission may determine and declare a reasonable and safe prima facie speed limit thereat which shall be effective when appropriate signs giving notice thereof are erected at such intersection or other place or part of the highway.

27–12–121. *Assent to federal acts on federal aid for highway purposes—Commission to represent state—Pledge of funds.*—The legislature of the State of Utah hereby assents to all the provisions of Title 23, United States Code Annotated, relating to federal aid for highway purposes, together with all acts amendatory thereof and supplemental thereto. The state road commission is hereby authorized to enter into all contracts and agreements with the United States government relating to the survey, construction and maintenance of roads under the provisions of the said acts, to submit such scheme or program of construction and maintenance as may be required by the appropriate federal agency, and to do all other things necessary fully to carry out the co-operation contemplated and provided for by the said acts. For the construction of federal-aid roads the good faith of the state is hereby pledged to make available funds sufficient to fully co-operate in such construction with the sums apportioned to the state by or under the United States government during each and all of the years for which federal funds are appropriated, and to make adequate provision for carrying out such maintenance.

In Section 41–6–47 the legislature granted to the State Road Commission the authority to alter the prima facie speed limit when, after an engineering and traffic investigation, it is determined that the existing speed limit is unreasonable or unsafe. In the instant case the State Road Commission never conducted an investigation to determine the reasonableness or safety of the previously existing speed limit. We

therefore hold that on this point they were acting outside their jurisdiction.

■ The second statute raises a different legal question. The State Road Commission is authorized in Section 27–12–121 to do all things "necessary" to fully cooperate with federal acts in order to receive federal funds for the construction and maintenance of the highways. However the rule of ejusdem generis applies here. The commission was authorized by the statute to do all other things necessary to fully carry out the cooperation contemplated and provided for by the federal act. Those unmentioned "other things" must be of the same kind, class, or nature as those specifically mentioned before, to wit: enter into contracts and agreements relating to the survey, construction, and maintenance of roads and to submit such scheme or program of construction and maintenance as may be required by the federal agency.

The statute was never intended to permit the State Road Commission to pass ordinances which would supersede the state law regarding speed of cars upon the highways of this state.

At the time and place of the offense involved herein, the speed on the highway in question according to the statute [6] was safe, reasonable, and prudent, but speed in excess of sixty miles per hour would be prima facie evidence that it would not be reasonable or prudent but would be unlawful.

In response to the President's recommendation, Congress passed HR–11372 which provided that states would receive no federal funds for highway construction and maintenance unless they adopted a maximum speed limit of fifty-five miles per hour or less. Before the State Road Commission acted in this matter, the Governor had exercised his prerogative in issuing his own proclamation.

The ordinance of the State Road Commission was not only useless, but for reasons stated above, it was a nullity. We affirm the judgment of conviction.

6. 41–6–46, U.C.A. 1953 as amended.

CROCKETT and MAUGHAN, JJ., concur.

WILKINS, J., concurs in the result.

HENRIOD, C. J., does not participate herein.